The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced. The times will be Attorney Smith, please introduce yourself for the record and proceed with your argument. Thank you. Good morning, Your Honors. Nick Smith for Appellant Melendez. The government raises three mootness arguments and an argument based on discretion to support the District Court's denial of Melendez's 3582C1B sentence reduction motion. I'm going to explain why each argument fails unless the court says it's not interested in one of the arguments and then I'll stop and proceed. The first argument the government says is that this court's decision in Renee E. categorically forecloses collateral consequences stemming from an already served sentence. Melendez has already served completely the sentence he challenged in the sentence reduction motion, Your Honors, but the government is not reading that decision correctly. In that case, the defendant stood accused of no new time. At the time of the crime, he challenged his already served sentence, so the court found that the decision was speculative. The rule from Renee E. is that the presumption of a conviction's collateral consequences from the Spencer case does not apply to sentencing. The burden is on the defendant to establish a collateral consequence and we think that that's easily cleared here when the government is arguing for a collateral consequence in the form of a 10-year mandatory minimum sentence in a pending case, Your Honors. The second mootness argument, I think, has more merit to it from the government's perspective. The government says that the 10-year mandatory minimum it seeks in the pending drug case turns on whether Melendez was, in fact, released from his term of imprisonment on the old serious drug felony within 15 years of the commencement of the instant drug charge. Its point, in a nutshell, is that 21 U.S.C. Section 802.57 is not a time machine. It is the case that Melendez was released within the 15-year window that would trigger the 10-year mandatory minimum on the sentencing on the pending drug case, except that we think that the decision the government's relying on McNeil shows why the circumstance is different with the first sentence, the first step back. McNeil concerned the Armed Career Criminal Act. The case said that when determining whether a prior offense constitutes a serious drug offense under the ACCA, a sentencing court should look to the maximum term of imprisonment as existed at the time of the past sentencing, not as the maximum term of imprisonment exists at the time of the present sentencing. But, Your Honors, the First Step Act is a time machine. The stated purpose of Section 404B is to address backward- You're construing the First Step Act rather than the word released in the 801 statute. So how does that help you? So, Your Honor, I think the government's brief itself acknowledges that 802.57, which contains the relevant language, was actually amended as a part of the First Step Act as well. So the government is trying to present this definition in 802.57 as an isolated island of sentiment within the First Step Act, which I think even the government would acknowledge is geared towards a retrospective analysis. How does the word released facilitate that argument? I can see how the word conviction in McNeil takes you back, but the problem here is just the word released. That just seems like a hard thing to say. Even though it was released, now we should pretend that release isn't the release that they were talking about. They're talking about some that didn't occur but could have. When we consider that section retrospectively, released would mean that Melendez's sentence effectively concluded on the covered offense at the time the retrospectively reduced sentence says it does. So Melendez was serving time, but that does not mean that he was serving time for the sentence as defined in Section 802.57. Your Honor, the word released is problematic there from our perspective, but consider the alternative, which is that the First Step Act intended to reduce sentences for covered offenses, which the government concedes is the case here, but that that lenity wouldn't apply to this one category of defendants who has already served their sentence but is now being hit with a premise that has been subsequently changed. So why would Congress's intent be to carve out this subset of defendants and impose the old rules on them but extend the new lenity to everyone else that's covered? Five minutes remaining. But the purpose, counsel, of the mandatory minimum, it seems to me, is to punish defendants who don't learn their lesson. That is, defendants who within a particular time period from the date of their release from incarceration re-offend in a particular way. And that's factually exactly what happens here. And the First Step Act doesn't seem to me nor to undercut the purpose of the literal meaning of 802.57. Your Honor, I think that's correct, except that we would just refine that somewhat slightly to say that the purpose of the mandatory minimum is to impose extra deterrence on a certain category of defenders, but the statute says that serious drug felony means an offense described in Section 924E2. So the intent was to impose extra punishment for the time served for a Section 841 sentence, not impose a mandatory minimum because supervised release punishment time happened to be imposed for any kind of offense. It could be an offense that Congress hadn't contemplated when deciding to impose a mandatory minimum sentence. And so, Your Honor, I think that goes to the third mootness argument, the final one the government is raising, which is that even if Melendez is correct on everything else, and the court was correct, that if it were to retrospectively reduce the sentence to the lower end of the guidelines range as it exists now, the supervised release punishments would drag Melendez back into the 15-year window, triggering the 10-year mandatory minimum because of the supervised release punishments, and they are treated as part of the penalty for the initial offense. The decisions the government cites for that proposition are Heyman and Johnson, but in those cases, the question was how supervised release was being treated when, in the context of a constitutional challenge to a supervised release punishment, the questions in those cases were concerned constitutional avoidance. The statutes were interpreted to mean that the supervised release punishment was the same as the underlying offense to avoid a challenge under Apprendi and the ex post facto clause. The question in this case, there was no avoidance question here. It's just a statutory interpretation question of whether term of imprisonment under Section 80257 is, quote, for an offense described in Section 924.2 of Title 18. A finding that supervised release punishment does not satisfy that definition in that statute does not mean the court's previous supervised release punishments violated Melendez' Sixth Amendment rights or the ex post facto clause. The question in this case, unlike Johnson and Heyman, is whether supervised release punishment is a part of the term of imprisonment. Before you end, I just want to give you a chance. What is the textual argument for how release can be read the way you want it to? Your Honor, I think really given the purpose of the First Step Act and that 80257 was amended in the First Step Act, release has to mean the conclusion of the term of imprisonment, quote, for an offense described in 924.2 of Title 18. So that sentence concluded and he was released from the sentence for that. The problem I just have, doesn't that mean that even though on your view he was released from it, he actually wasn't in fact released from it for some period of time after that sentence had ended? Judge, I think that problem did not pose an issue to Judge Sack in the Martin decision when he found that in that case there was an aggregated sentence that was aggregated for administrative purposes. The convictions at issue, all the parties agreed that the sentence had concluded on those convictions, but yet the defendant remained incarcerated because of some other offense that wasn't at issue in the underlying criminal case. It was a prison crime and yet Judge Sack found that retrospective relief for an already served sentence was appropriate. That's time. Thank you. Judge Barron, Judge Salyud, either of you have any more questions? No. Thank you, Mr. Smith. Thank you. Attorney Smith, please mute your audio and video at this time. Attorney Friedholm, if you would please unmute your audio and video and introduce yourself on the record to begin. Good morning, Your Honors. Greg Friedholm on behalf of the government. I would just pick up really where Mr. Smith started is the mootness argument and I would suggest that he attempted to attack the first prong of the mootness challenge. Am I frozen? No. Okay. I apologize. But really what Judge Gorton did was appropriately focus on the second prong of the determination of whether there was Article III jurisdiction. And that is not that the challenge portion of the sentence is traceable to the injury, but is the potential injury or the alleged injury likely to be redressed by a favorable judicial decision? And that's where Judge Gorton really honed in on and found that even if he provided the relief that the defendant in this case requested, that it still wouldn't avoid the injury that he claimed was a continuing injury as a result of this. Because if everything Mr. Smith just said was correct, wouldn't he be entitled to more than mootness? Well, I don't think that we're talking merits when it comes to a statutory interpretation of, and maybe I'm misconstruing your question, but a statutory interpretation of 802.57 that there's no way through a plain reading of that statute that he can avoid the application of the recidivist enhancement here. That's a merit at this point, isn't it? Perhaps, but I would suggest that... How is it not a merits point? I mean, it just is a merits point. Correct, Your Honor. So there's no mootness problem, it's just we go to the merits and if you're right that there's no way to read it as he reads it, he loses. If he's right that you can read it that way, he wins. But I would suggest that... Understood, understood. But I would suggest that there is no plausible reading of this statute that will allow him to... the redress that he is looking for. But moving to 802.57, Your Honor. As Your Honor pointed out, a plain reading of the statute is clear that it is a backward-looking statute. Was Mr. Melendez convicted of a crime that is within the scope of that statute? Did he serve at least 12 months imprisonment, which he did, and was he released from imprisonment within 15 years of the beginning of the conduct that constitutes the new offense, which he certainly was. He was released in March of 2007 and pursuant to the indictment that's been issued against him, the conduct began in March of 2019. So he is well within... It doesn't quite say released from imprisonment. It says released from any term of imprisonment. And so I think the counter-argument that you need to address is that there's a difference between factual imprisonment and term of imprisonment. I read the release from any term of imprisonment more going towards the second argument that Mr. Melendez makes in this case, that the supervised release violations don't constitute part of the offense or should not come within the scope of that statute. And I would suggest that the phrase any term of imprisonment is directed to the fact that he was not only sentenced to a term of imprisonment initially, but it was also sentenced to subsequent terms of imprisonment based upon the three supervised release violations that occurred in this case. And so if Congress had intended that the courts only look to the term of imprisonment that resulted from the initial sentencing, then the phrase any term of imprisonment would be superfluous. It wouldn't be there for any particular reason. So I think because of that, a plain reading of the statute undercuts the argument that Mr. Melendez is attempting to make here. So based upon that, I would suggest that the relief that he is seeking in this case would not be effective even if Judge Gordon had allowed for his motion. And going back to Judge Gordon's decision, if I might, and based upon a recent decision by this court, Judge Gordon was should be calculated using the current guidelines in effect now. The defendant is pushing for a guideline range of 51 to 63, and using that as the benchmark for his request that the court impose a reduced sentence of 51 months, and then further asking that the court disregard those supervised release violations. But as the court is well aware, the guideline range should be calculated when addressing initially any 404B requests or motion using the guideline range that were in effect at the time of the initial sentencing. Here, the guideline range was 97 to 121 months. In 2006, when Mr. Melendez was sentenced to 109 months, those guideline range would remain unaffected even by application of Section 2 of the Fair Sentencing Act. So I think the defendant's position starts with the faulty premise that the court should address this as a guideline range of 51 to 63, when in fact we know now that that is not the appropriate procedure, and Judge Gordon was was skeptical of that from the get-go. The appropriate guideline range for the court to Ultimately, even if the court were to find there was some merit in the legal arguments made by Mr. Melendez, however, the First Step Act is clear that the discretion lies with the district court whether to reduce the sentence even if it was an available remedy, and here I would suggest that Judge Gordon was clear that even if he had jurisdiction to reduce Mr. Melendez's sentence in this case, that he would not exercise that discretion, and he appropriately took into consideration many of the factors that the court described in Concepcion most recently, the conduct of this defendant post-initial sentencing. Here, Judge Gordon specifically referenced the three violations of supervised release. He specifically referenced the fact that Mr. Melendez had been arrested, charged, and convicted of a trespass in disturbing the peace. He took into account the fact that Mr. Melendez had subsequently been arrested and convicted for aggravated assault and battery, and so based upon that, I think Judge Gordon was well within his purview and well within his discretion to reduce Mr. Melendez's sentence in the manner that he wished to, that he would not exercise his discretion to do so. If your honors have any further questions, I would be happy to address them. Other than that, I would leave it to the briefing. Thank you, Mr. Friedholm. That concludes argument in this case. Attorney Smith and Attorney Friedholm, you should disconnect from the hearing at this time.